DANA A. SUNTAG (State Bar # 125127)
JOSHUA J. STEVENS (State Bar # 238105)
ALEXANDER R. THOMAS (State Bar # 350132)
HERUM CRABTREE SUNTAG, LLP
5757 Pacific Avenue, Suite 222
Stockton, California 95207
Telephone: (209) 472-7700
dsuntag@herumcrabtree.com
jstevens@herumcrabtree.com
athomas@herumcrabtree.com

Attorneys for Defendants
COUNTY OF SAN JOAQUIN
(including its HUMAN SERVICES AGENCY),
LAZARO GONZALEZ (incorrectly named as
"Lazaro Gonzales"), CHARLIE FOO, and
RACHEL APODACA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS CODY, SKYLAR CODY, KAYCIE CODY, individually and as guardian ad litem for her minor children K.S.-1 and K.S.-2,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN JOAQUIN, et al.,<br><br>Defendants. | Case No.: 2:23-cv-02318-TLN-CSK<br><br>**DEFENDANTS COUNTY OF SAN JOAQUIN, LAZARO GONZALEZ, CHARLIE FOO, AND RACHEL APODACA'S ANSWER TO THIRD AMENDED COMPLAINT** |

Defendants County of San Joaquin (the "County"), Lazaro Gonzalez, Charlie Foo, and Rachel Apodaca (collectively, "Defendants"), for themselves only, in answer to Plaintiffs' Third Amended Complaint, admit, deny, and allege as follows:

1. Defendants admit the allegations in paragraphs 2, 5, 7, 82, 92, 95, 97, 111, 112, 116, 147, 172, 204, and 246.

2. Defendants deny each allegation in paragraphs 8, 17, 18, 19, 24, 33, 34, 35, 40, 42, 45, 53, 54, 66, 70, 72, 73, 76, 81, 89, 91, 105, 113, 115, 125, 128, 129, 133, 134, 139, 141, 144, 146, 161, 162, 167, 168, 173, 174, 185, 190, 195, 200, 202, 203, 210, 211, 212, 213, 214, 217, 225, 228, 234, 236, 255, 260, 261, 265, 266, 267, 274, 275, 277, 279, 280, 282, 284, 286, 287, 288, 291, 295, 296, 297, 298, 300, 301, 302, 303, 304, 305, 309, 310, 313, 314, 317, 318, 322, 324, 327, 328, 330, 331, 334, 336, 337, 338, 339, 341, 342, 343, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, and 364.

3. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 1, 3, 4, 6, 12, 13, 14, 15, 16, 20, 26, 27, 28, 29, 30, 31, 35, 37, 43, 44, 48, 61, 62, 64, 65, 69, 77, 78, 79, 83, 85, 86, 87, 96, 101, 102, 103, 104, 108, 109, 118, 119, 120, 123, 130, 131, 140, 142, 148, 157, 158, 180, 186, 187, 215, 244, 252, 256, 257, 258, 262, 263, 290, 292, 306, 311, 315, and 319.

4. Defense counsel has not received necessary documentation or information from juvenile case files, protected under California Welfare and Institutions Code Section 827 and Rule of Court 5.551, to be able to respond to the following paragraphs under Federal Rule of Civil Procedure 8(b); accordingly, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in the following paragraphs: 243, 250, 254, and 285. Defendants reserve may amend this Answer after counsel have received and reviewed the necessary documentation.

5. As to paragraph 9, Defendants admit that Lazaro Gonzalez (incorrectly named as "Lazaro Gonzales") was an individual residing in the County and an officer,

agent, and/or employee of the County and/or HSA; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

6. As to paragraph 10, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that Mr. Foo is sued in his individual capacity as an employee of the County; Defendants admit each remaining allegation.

7. As to paragraph 11, Defendants deny knowledge or information sufficient to form a belief as to the allegation that Ms. Apodaca is sued in her individual capacity as an employee of the County; Defendants deny each remaining allegation.

8. As to paragraph 21, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that "in September of 2019, Mother was granted sole legal and sole physical custody in Stanislaus County Family Court." Defendants deny each remaining allegation.

9. As to paragraph 22, Defendants admit that Plaintiff Kaycie[1] told Mr. Foo on October 21, 2021, that she had custody of K.S.-1 and K.S.-2; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

10. As to paragraph 23, Defendants admit that a "Safety Plan" is a written agreement with terms such as whether one or the other parent should move out of the home, or who can visit who, and when, where, and how; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

11. As to paragraph 25, Defendants admit that on November 17, 2021, during the phone call Ms. Apodaca made to Kaycie, Ms. Apodaca gave notice of the hearing to take place on November 18, 2021; Defendants admit Kaycie told Ms. Apodaca that K.S.-1 and K.S.-2 were previously kidnapped by their father; Defendants deny each remaining allegation.

---

1 Because Plaintiffs share the same surname, in this Answer Defendants refer to each by his or her first name or, if minors, by their initials. No disrespect is intended.

HERUM \ CRABTREE \ SUNTAG ATTORNEYS

12. As to paragraph 32, Defendants deny that in March of 2019, Nicholas's oldest son Tyler made false allegations against Nicholas and Kaycie claiming physical abuse and that Mr. Gonzalez was assigned the case.

13. As to paragraph 36, Defendants admit the Safety Plan was completed by Mr. Burgers (whose name Plaintiffs incorrectly spelled "Burgess"); Defendants deny the Safety Plan was completed by Mr. Gonzalez and deny that it included the statement, "After Tyler punched his father, Nicholas hit him back." Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

14. As to paragraph 38, Defendants admit Kaycie was not included in the Safety Plan concerning Tyler; Defendants deny knowledge or information sufficient to form a belief as to whether Kaycie was asked to sign; Defendants deny each remaining allegation.

15. As to paragraph 39, Defendants admit that Mr. Burgers did not interview K.S.-1 or K.S.-2 during the investigation of the alleged physical abuse; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

16. As to paragraph 41, Defendants admit the police report stated Tyler told the police he was not hurt; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that, after Nicholas signed the safety plan, he and Kaycie called Mr. Burgers many times asking for help because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond to this allegation; Defendants deny each remaining allegation.

17. As to paragraph 46, Defendants admit that the disposition of the referral findings as "Substantiated" resulted in Nicholas and Kaycie being put on the Child Abuse Central Index ("CACI"); Defendants deny each remaining allegation.

18. As to paragraph 47, Defendants admit that Gonzalez knew the implications involved with an individual being placed on the CACI; Defendants deny that they made

a decision to place Nicholas and Kaycie on the CACI or labeled Nicholas and Kaycie as "child abusers"; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

19. As to paragraph 49, Defendants admit Gonzalez was aware that Kaycie was in law school; Defendants deny each remaining allegation.

20. As to paragraph 50, Defendants admit CACI hearings were held in September and October of 2019 and that Nicholas and Kaycie argued as *pro se* litigants; Defendants deny each remaining allegation.

21. As to paragraph 51, Defendants admit after the CACI hearings, the finding was overturned as inconclusive; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

22. As to paragraph 52, Responding Party admits that in 2016 two pro se litigants obtained reversal of CACI findings and were able to remove their name from the CACI list; Responding Party lacks knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

23. As to paragraph 55, Defendants admit Nicholas and Kaycie exercised their rights of appeal; Defendants deny each remaining allegation.

24. As to paragraph 56, Defendants admit that in November 2019, an anonymous call was made to CPS regarding Tyler; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

25. As to paragraph 57, Defendants admit CPS does not share the identity of reporters of child abuse to persons outside of CPS; Defendants deny each remaining allegation.

26. As to paragraph 58, Defendants admit HSA did not investigate the allegation; Defendants deny each remaining allegation.

27. As to paragraph 59, Defendants admit the report from Ms. Scroggins stated Tyler was dropped off in Manteca at a Hell's Angel's Club and that Tyler ran into

family friend Eric Cooney while wandering the streets; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

28. As to paragraph 60, Defendants admit Ms. Scroggins's report was not investigated by HSA and was included in reports to the Dependency Court; Defendants deny each remaining allegation.

29. As to paragraph 67, Defendants admit Ms. Apodaca did not include in her reports that Nicholas allowed Tyler to remain with Mr. Cooney and Ms. Scroggins's report did not reach the statutory level to respond to and investigate the report; Defendants deny each remaining allegation.

30. As to paragraph 68, Defendants deny V.C. was fifteen years old on October 15, 2021.

31. As to paragraph 71, Defendants admit that on October 15, 2021, Mr. Foo interviewed V.C. at the Ripon Police Department about her allegations; Defendants deny each remaining allegation.

32. As to paragraph 74, Defendants admit V.C. claimed Nicholas had touched her breasts under her shirt, touched her thighs, and reached for her vaginal area—or had attempted to but she would push his hand away—about 20 times; Defendants deny each remaining allegation.

33. As to paragraph 75, Defendants admit that V.C. never claimed to Mr. Foo that Nicholas inserted his fingers in V.C. and V.C. claimed inappropriate touching; Defendants deny each remaining allegation.

34. As to paragraph 80, Defendants deny that the officers noted the inconsistencies in V.C.'s allegations in their report and Officer West allowed Nicholas to return to the elementary school to go pick up K.S.-1 and K.S.-2 during his interview; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

35. As to paragraph 84, Defendants deny that Mr. Foo did not inform Nicholas or Kaycie that V.C. would not be returning that day either prior to or while at their home;

Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

36. As to paragraph 88, Defendants admit Mr. Foo drove V.C. to Mary Graham Children's Shelter (the "Shelter"). Defendants deny each remaining allegation.

37. As to paragraph 90, Defendants admit that the Ninth Circuit in *Rogers v. County of San Joaquin*, 487 F.3d 1288 (9th Cir. 2007), instructed the district court to grant partial summary judgment to the Rogers. Defendants deny each remaining allegation.

38. As to paragraph 93, Defendants admit Mr. Foo and Mr. Gonzalez did not have evidence that V.C. had ever been physically abused by Nicholas or Kaycie and did not allege physical abuse when she testified at trial; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

39. As to paragraph 94, Defendants admit that Mr. Foo called Mr. Gonzalez at approximately 5:30 p.m. to keep him informed of the case and events; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

40. As to paragraph 98, Defendants admit Nicholas and Kaycie gave V.C.'s clothing, bedding, and pillows to Ms. Apodaca. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

41. As to paragraph 99, Defendants admit Skylar, K.S.-1 and K.S.-2 were still living in the home since V.C.'s removal; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

42. As to paragraph 100, Defendants admit V.C. was able to continue going to school at Ripona Elementary for a couple of weeks after her removal; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

43. As to paragraph 106, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that at trial counsel for the County asked

K.S.-2 something along the lines of, "don't you think that if you believed her allegations, she may not have done this" because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond to this allegation; Defendants deny knowledge or information sufficient to form a belief as to whether K.S.-2 was hurt; Defendants deny each remaining allegation.

44. As to paragraph 107, Defendants admit that on October 21, 2021, Gonzalez directed Mr. Foo to create a safety plan with Kaycie for K.S.-1 and K.S.-2; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

45. As to paragraph 110, Defendants admit on October 21, 2021, at around 10 a.m., Mr. Foo met with Kaycie at the family home to sign the safety plan for K.S.-1 and K.S.-2; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

46. As to paragraph 114, Defendants admit Kaycie signed the document; Defendants deny each remaining allegation.

47. As to paragraph 117, Defendants admit on October 25, 2021, Mr. Foo contacted Kaycie by phone to set up a CAC interview of K.S.-1 and K.S.-2, Kaycie agreed to the interview for both minors, and it was scheduled for October 28, 2021; Defendants deny it was scheduled to take place at 12:00 p.m. at the Shelter; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

48. As to paragraph 121, Defendants admit Kaycie rescheduled for November 5, 2021, at 10 a.m. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

49. As to paragraph 122, Defendants admit that on or about November 5, 2021, Kaycie contacted Mr. Foo. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

50. As to paragraph 124, Defendants admit Kaycie stated that the minors had already been interviewed and that they had not disclosed any abuse; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

51. As to paragraph 125, Defendants deny that on November 8, 2021, Mr. Foo emailed social worker Gonzalez regarding Plaintiffs, and Mr. Foo alleged "Kaycie / the parents" refused to allow the interview; Defendants deny this information was false.

52. As to paragraph 126, Defendants deny there was no risk of harm if the children were left in the home, 29 days had gone by since the initial contact with the family stemming from V.C.'s allegations, and Mr. Foo never got back in touch with Kaycie. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

53. As to paragraph 127, Defendants deny knowledge or information sufficient to form a belief as to whether Kaycie explicitly told Mr. Foo that if the interviews were in fact "necessary" or "mandatory" she would make them available for the interviews, and the relevant medical information was intentionally omitted in the later prepared Detention Report by Mr. Foo, Mr. Gonzalez, Ms. Apodaca, or Ms. Butman in consultation and with the ratification of Mr. Gonzalez as to the decision to exclude it in order to make it look like the parents were simply "refusing to cooperate with the agency."

54. As to paragraph 132, Defendants admit a meeting was held on November 12, 2021, with Mr. Gonzalez, Mr. Foo, and other staff regarding Kaycie, K.S.-1 and K.S.-2; Defendants admit the findings for "at risk sibling abuse" had been determined to be inconclusive as to Nicholas; Defendants deny each remaining allegation.

55. As to paragraph 136, Defendants admit that on November 12, 2021, Mr. Gonzalez, Mr. Foo, and other staff conducted a meeting regarding Nicholas and Skylar Cody; the finding for "at risk sibling abuse" was inconclusive and the finding for sexual abuse of Skylar was unfounded; and the meeting resulted in a decision to file a

non-detained petition as to Skylar. Defendants deny the meeting was after-hours. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

56. As to paragraph 137, Defendants admit that on November 15, 2021, Mr. Foo and Mr. Gonzalez signed the Detention Report in the matter of K.S.-1 and K.S.-2 under penalty of perjury. Defendants deny each remaining allegation.

57. As to paragraph 138, Defendants deny knowledge or information sufficient to form a belief as to whether Kaycie asked if the forensic interviews were necessary. Defendants deny the Detention Report contained the quoted language, the quoted language was false, Defendants were knowingly malicious in including the quoted language, Defendants made no effort to remedy the issue of the forensic interviews, and Defendants did not seek a "lesser intrusive alternative."

58. As to paragraph 143, Defendants deny that Ms. Apodaca contacted Kaycie on November 17, 2021, around 3 p.m.; Defendants deny knowledge or information sufficient to form a belief as to whether Ms. Apodaca asked Kaycie "to please let Nicholas know as well that a petition was filed on behalf of Skylar."

59. As to paragraph 145, Defendants admit Kaycie told Ms. Apodaca that the minors were kidnapped by their father; Defendants deny each remaining allegation.

60. As to paragraph 149, Defendants admit Kaycie attended the hearing. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

61. As to paragraph 150, Defendants admit they told the court Skylar had been asked to participate in a forensic interview; Defendants deny each remaining allegation.

62. As to paragraph 151, Defendants admit that in late November of 2021, the County asked the court to strike from the initial harm statement the statement regarding the CAC interview and that the court ordered K.S.-1, K.S.-2, and Skylar removed from their parents' custody at the November 18, 2021, hearing. Defendants deny Ms. Apodaca asked the court to strike the statement and Skylar was never asked to

participate in a CAC interview. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

63. As to paragraph 152, Defendants admit the County argued to detain Skylar; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

64. As to paragraph 153, Defendants admit Mr. Foo and Mr. Gonzalez signed the Detention Report under penalty of perjury; Defendants deny each remaining allegation.

65. As to paragraph 154, Defendants admit Skylar was sixteen years old and a male. Defendants deny knowledge or information sufficient to form a belief as to whether Skylar was an athlete; Defendants deny each remaining allegation.

66. As to paragraph 155, Defendants deny anyone lied to the court; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

67. As to paragraph 156, Defendants deny knowledge or information sufficient to form a belief as to whether Ms. Apodaca or other Doe Defendant employees provided or mentioned the medical records of K.S.-2 to the court; Defendants deny each remaining allegation.

68. As to paragraph 159, Defendants admit that on November 18, 2021, the court ordered K.S.-1 and K.S.-2 removed from Kaycie's care. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

69. As to paragraph 160, Defendants deny Judge Alva repeatedly told Kaycie to stop talking or told the court reporter to "stop typing"; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

70. As to paragraph 163, Defendants deny that Kaycie's brother was the minor children's uncle.

71. As to paragraph 164, Defendants admit the Court allowed Nicholas to have supervised visits with Skylar; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that the court ordered that Nicholas's visits with Skyler were to be "monitored by social workers at HHSA for one hour a week" because, as we explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond to this allegation; Defendants deny the requirement was "ridiculous"; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

72. As to paragraph 165, Defendants admit the court ordered supervised visits between Kaycie and K.S.-1 and K.S.-2; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond.

73. As to paragraph 166, Defendants admit a hearing was held on December 1, 2021; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond.

74. As to paragraph 169, Defendants admit the phone call had to do with a period of time while the children were removed and placed with their uncle in Modesto; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

75. As to paragraph 170, Defendants admit a school staff member alerted Ms. Apodaca about the call; Defendants deny the school staff member called Ms. Apodaca; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

76. As to paragraph 171, Defendants deny that Ms. Apodaca directed a school official to call Kaycie; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

77. As to paragraph 175, Defendants admit the court did not remove the minors from the placement with the uncle at the hearing; Defendants deny each remaining allegation.

78. As to paragraph 176, Defendants admit on December 7, 2021, Skylar, K.S.-1, and K.S.-2 participated in the CAC forensic interviews; Defendants deny each remaining allegation.

79. As to paragraph 177, Defendants admit that in the interview, Skylar stated he believed V.C. was lying about the allegations to get out of the house because of the rules and her desire to live with her mother, Scroggins, and brother Tyler and that on or around October 19, 2021, Kaycie told Apodaca that V.C. was lying; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

80. As to paragraph 178, Defendants admit in the interview, Skylar stated V.C. was manipulative and lied and that Kaycie told Ms. Apodaca V.C. lied; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that on or around October 19, 2021, Kaycie told Ms. Apodaca this when she picked up V.C.'s belongings because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond to this allegation; Defendants deny each remaining allegation.

81. As to paragraph 179, Defendants admit Skylar stated during his CAC interview that V.C. was hiding from Nicholas and Kaycie that she was dating a seventeen-year-old boy; Defendants deny each remaining allegation.

82. As to paragraph 181, Defendants deny Ms. Apodaca did not react; Defendants admit the tablet was one of the items on the list V.C. had provided of items

to retrieve from the home; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

83. As to paragraph 182, Defendants admit the tablet was on the list of items of things V.C. requested; Defendants deny each remaining allegation.

84. As to paragraph 183, Defendants admit Skylar stated he did not believe V.C. and that she previously attempted to disclose her allegations against Nicholas to Skylar; Defendants deny knowledge or information sufficient to form a belief as to whether this dynamic between Tyler and V.C. as "confidantes" was told to investigators. Defendants deny each remaining allegation.

85. As to paragraph 184, Defendants admit CAC forensic interviews for K.S.-1 and K.S.-2 took place on December 7, 2021, and that K.S.-1 disclosed that V.C. said on many occasions that she no longer wanted to live with them and wanted to live with her mother; Defendants deny each remaining allegation.

86. As to paragraph 188, Defendants admit that a court hearing was held on December 15, 2021; the CAC interviews had been conducted by that date; the videos of the interviews were made available to the County; Defendants had not yet provided Plaintiffs with copies of the interview videos or transcripts because the transcripts were not ready; during the CAC interview, Skylar stated he felt that V.C. was lying and he threatened her that if she did not break up with her boyfriend he would tell his parents. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that the purpose of the December 15, 2021, hearing was to determine the results of the forensic interviews because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond to this allegation. Defendants deny each remaining allegation.

87. As to paragraph 189, Defendants admit that Defendants did not provide copies of the videos or transcripts of the December 7, 2021, interviews to Plaintiffs before the December 15, 2021, hearing, and Nicholas's counsel requested a copy of the CAC interviews; Defendants deny each remaining allegation.

88. As to paragraph 191, Defendants admit that at the December 15, 2021, hearing, Skylar's counsel requested the court allow him to return home with Kaycie; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

89. As to paragraph 192, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation Ms. Apodaca had reviewed the recording of Skylar's CAC interview before the December 15, 2021, hearing; Defendants deny each remaining allegation.

90. As to paragraph 193, Defendants admit Plaintiffs were not provided recordings or transcripts of Skylar's December 7, 2021, interview at the CAC before December 15, 2021; Defendants deny each remaining allegation.

91. As to paragraph 194, Defendants deny that Ms. Apodaca or Ms. Butman signed the Detention Report under penalty of perjury, provided false information about Skylar's CAC interview comments, or twisted Skylar's true testimony and County Counsel or Ms. Apodaca's representations were false. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

92. As to paragraph 196, Defendants admit at the December 15, 2021, hearing counsel for Kaycie and counsel for K.S.-1 and K.S.-2 requested the court allow K.S.-1 and K.S.-2 to return home with Kaycie and the County objected to that request; Defendants deny each remaining allegation.

93. As to paragraph 197, Defendants admit the court allowed K.S.-1 and K.S-2 to return to Kaycie's home at the hearing and that the court denied the request for Skylar; Defendants deny knowledge or information sufficient to form a belief as to the reason for the court's decision.

94. As to paragraph 198, Defendants deny Mr. Gonzalez signed the detention report attached to the Jurisdiction Report as to Skylar and on November 15, 2021, Mr. Foo signed the detention report.

95. As to paragraph 199, Defendants admit Ms. Butman signed the Jurisdiction Report; Defendants deny each remaining allegation.

96. As to paragraph 201, Defendants admit the findings for "at risk sibling abuse" were found to be "inconclusive"; Defendants deny each remaining allegation.

97. As to paragraph 205, Defendants deny Ms. Apodaca objected to the request.

98. As to paragraph 206, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that Skylar made certain statements during the hearing because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond to this allegation; Defendants deny each remaining allegation.

99. As to paragraph 207, Defendants deny Ms. Apodaca argued anything; Defendants admit the County argued against placing Skylar back in the family home because Kaycie had an open case, making it an illegal placement; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

100. As to paragraph 208, Defendants admit Ms. Apodaca was aware of Skylar's emotional decline and that, during a hearing, the County requested and the Court ordered Skylar undergo a mental health evaluation; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations that Skylar made certain statements to the court or that the court "ordered the evaluation found no need for him to begin therapy and the issue was finally dropped"; Defendants deny each remaining allegation.

101. As to paragraph 209, Defendants admit the County argued Nicholas alienated Ms. Scroggins for the past five years; Defendants deny each remaining allegation.

102. As to paragraph 216, deny knowledge or information sufficient to form a belief as to whether each medical test or procedure performed on Skylar while at the

Shelter or in County custody was against his will; Defendants deny each remaining allegation.

103. As to paragraph 218, Defendants admit Nicholas had a Constitutional right to notice of and an opportunity to be present at some medical appointments but deny Plaintiffs' characterization of that right; Defendants deny each remaining allegation.

104. As to paragraph 220, Defendants admit Skylar stayed at the Shelter until his maternal grandmother, Cynthia Cody, picked him up; Defendants deny he was at the Shelter for one week; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

105. As to paragraph 221, Defendants deny knowledge or information sufficient to form a belief as to whether Skylar was placed in isolation while at the Shelter; Defendants deny each remaining allegation.

106. As to paragraph 222, Defendants admit that in December 2021 or January 2022, Skylar participated in a group call during school hours with Ms. Apodaca, Ms. Scroggins, Cory Harden, Tyler, and David Gardner; Defendants deny Skylar was forced to participate in the call; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

107. As to paragraph 223, Defendants deny that Nicholas and Kaycie told Mr. Foo, Mr. Gonzalez, and Ms. Apodaca that Scroggins abused Skylar while she was with Harden, Harden helped hide the abuse and Scroggins's alcoholism, and that before Skylar was placed with Nicholas at age 10, Nicholas and Kaycie filed multiple restraining orders against Scroggins in Stanislaus County due to her abuse and neglect of the children in her care. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

108. As to paragraph 224, Defendants admit the dependency court offered Scroggins drug court intervention as part of her reunification plan with V.C. Defendants deny that they forced Skylar to participate in a group call and Apodaca or the County were aware of the details of Nicholas's or Scroggins's family law disputes in Stanislaus

County or the Stanislaus County Superior Court's orders concerning that dispute. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

109. As to paragraph 226, Defendants deny the County, Ms. Apodaca, or other County defendants forced Skylar to have in-person visits with Ms. Scroggins and in February 2022 Skylar refused to participate in the supervised visits. Defendants admit Ms. Scroggins tried to give Skylar a note. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

110. As to paragraph 227, Defendants admit Nicholas told Ms. Apodaca about Scroggins attempting to give Skylar a note; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that Ms. Apodaca never reported that Scroggins attempted to give Skylar a note because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond to this allegation; Defendants deny each remaining allegation.

111. As to paragraph 229, Defendants admit on March 11, 2022, V.C. testified during a hearing regarding her allegations against Nicholas; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond.

112. As to paragraph 230, Defendants admit that at this hearing, Cynthia stated she would no longer house Skylar; Defendants deny Ms. Apodaca argued against Cynthia no longer acting as a caregiver; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond.

113. As to paragraph 231, Defendants deny this claim, or any claim of Ms. Apodaca's, was false. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

114. As to paragraph 232, Defendants admit that the morning of the hearing, Cynthia told Ms. Apodaca that she could no longer keep Skylar; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

115. As to paragraph 233, Defendants admit the court allowed Skylar to return to the family home on this day and continued the supervised visits with Nicholas; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

116. As to paragraph 235, Defendants admit on March 17, 2022, Skylar testified at the contested jurisdictional hearing; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation Skylar testified for three hours; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that Skylar's "testimony was consistent with his prior interview with social worker Defendant Foo and the CAC forensic interview as well as any other time he was questioned by County employees such as Apodaca" because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond to this allegation; Defendants deny each remaining allegation.

117. As to paragraph 237, Defendants admit that on March 18, 2022, Skylar and K.S.-2 testified during the contested jurisdictional hearing; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation K.S.-2 testified for over two hours; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that "Again, Skylar and K.S.-2's testimony was consistent with their prior testimony given throughout the investigation" because, as explained in paragraph number 4, defense counsel have not yet received the protected

documentation or information sufficient to respond to this allegation; Defendants deny each remaining allegation.

118. As to paragraph 238, Defendants deny that April 22, 2022, was the third day of trial and May 3, 2022, was the fourth day of trial; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations K.S.-1 testified for the entire morning session or for two hours.

119. As to paragraph 239, Defendants admit K.S.-1 testified at the contested jurisdictional hearing on May 3, 2022; Defendants deny this was the fourth day of trial; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond.

120. As to paragraph 240, Defendants admit the court set a hearing for May 16, 2022; Defendants deny the allegation Nicholas's Fifth Amendment rights were violated; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond.

121. As to paragraph 241, Defendants deny May 16, 2022, was the fifth day of trial.

122. As to paragraph 242, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations that Kaycie's counsel introduced medical records or the records were never shown or presented to the judge until then because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond to these allegations; Defendants deny each remaining allegation.

123. As to paragraph 243, Defendants admit K.S.-2 testified during the proceedings in the dependency court and counsel for the County examined her during

that testimony; Defendants deny Ms. Apodaca attempted to discredit K.S.-2 during K.S.-2's testimony; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiffs believe certain evidence would not have been presented to the court absent Kaycie's testimony; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond.

124. As to paragraph 245, Defendants admit Apodaca was told K.S.-1 and K.S.-2 had been kidnapped by their father; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiffs believe certain information would not have been "disclosed" to the court absent Kaycie's testimony; Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations that Kaycie's testimony included certain "facts" or that information was never disclosed to the court or judge during proceedings or other hearings because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond; Defendants deny each remaining allegation.

125. As to paragraph 247, Defendants admit the court sustained the allegations stemming from V.C.'s claims against Nicholas and allowed Nicholas to return to the family home; Defendants deny knowledge or information sufficient to form a belief as to how long Nicholas had been gone from the family home; Defendants deny each remaining allegation.

126. As to paragraph 248, Defendants admit the judge allowed Nicholas Cody to return to the family home; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond.

127. As to paragraph 249, Defendants deny there was no evidence suggesting that there were any DV issues in the home from any witness within the reports or within trial testimony other than V.C.; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond.

128. As to paragraph 251, Defendants deny that the court denied Ms. Apodaca and the County's request to amend the petitions; Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation because, as explained in paragraph number 4, defense counsel have not yet received the protected documentation or information sufficient to respond.

129. As to paragraph 253, Defendants admit Apodaca knew the case had been dismissed and that Nicholas had full custody of Skylar; Defendants deny each remaining allegation.

## FIRST CLAIM FOR RELIEF
## FAMILIAL ASSOCIATION VIOLATIONS

130. As to paragraph 259, Defendants incorporate by reference their responses to paragraphs 1 through 255.

### 1A. FAMILIAL ASSOCIATION VIOLATION AND WARRANTLESS REMOVAL OF V.C.

131. Defendants responded to each allegation pled under this heading in paragraphs 2 and 3, above.

### 1B. FAMILIAL ASSOCIATION VIOLATION AND PLAINTIFFS' RIGHT TO LIVE TOGETHER AS A FAMILY WITHOUT GOVERNMENT INTERFERENCE

132. As to paragraph 264, Defendants admit they had a duty and obligation to comply with Plaintiffs' constitutional rights; Defendants deny Plaintiffs' characterization of that duty and obligation and those rights.

133. As to paragraph 268, Defendants deny that Mr. Foo lied to Kaycie.

134. As to paragraph 269, Defendants admit that Mr. Foo stated in the Detention/Jurisdiction Report that Kaycie canceled the interview on October 28, 2021, because K.S.-2 was not feeling well; Defendants deny each remaining allegation.

135. As to paragraph 270, Defendants admit that Mr. Foo and Mr. Gonzalez did not report that Kaycie had asked if the interview was mandatory and if so, they would attend; Defendants deny each remaining allegation.

136. As to paragraph 271, Defendants deny they fabricated evidence or presented knowingly false information to the court knowing that the court would rely on the fabricated or knowingly false information.

137. As to paragraph 272, Defendants deny anyone knew the statement to be false; Defendants admit they later had it stricken from the record at a later hearing.

138. As to paragraph 273, Defendants admit the Fourteenth Amendment guarantees certain rights and Mr. Foo investigated and found V.C.'s allegations of sexual abuse by Nicholas to be inconclusive; Defendants deny each remaining allegation.

139. As to paragraph 276, Defendants deny Mr. Foo and Mr. Gonzalez, while acting under color of state law, conspired and agreed to not include the exculpatory and relevant material information and questions posed by Kaycie in the conversation that occurred between herself and Mr. Foo by phone on November 5, 2021. Defendants admit November 5, 2021, was the subsequent scheduled date for the CAC interviews for the minor daughters and that on November 17, 2021, Mr. Foo called Kaycie to tell her a petition was being filed for Skylar, K.S.-1, and K.S.-2. Defendants deny knowledge or information sufficient to form a belief as to the truth of each remaining allegation.

140. As to paragraph 278, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations Kaycie and Nicholas would have consented to CAC interviews of Skylar, K.S.-1, and K.S.-2; Defendants deny each remaining allegation.

141. As to paragraph 281, Defendants admit that the prior hearing had resulted in the prior substantiated finding of physical abuse to be changed to inconclusive and

allowed Nicholas and Kaycie to have their names removed from the CACI list; Defendants deny each remaining allegation.

142. As to paragraph 283, Defendants admit Plaintiffs had a right to present evidence and be heard pursuant to Cal. Welf. & Inst. Code Section 319(a); Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that on November 18, 2021, Kaycie gave, exchanged, or provided medical records to Ms. Apodaca or counsel for the County; Defendants deny each remaining allegation.

143. As to paragraph 289, Defendants admit there are certain circumstances in which procedural due process rights can be violated in dependency court because of judicial deception but deny Plaintiffs' characterization of the law; Defendants deny each remaining allegation.

## <u>SECOND CLAIM FOR RELIEF</u>
## JUDICIAL DECEPTION

144. As to paragraph 294, Defendants incorporate by reference their responses to paragraphs 259 through 293.

145. As to paragraph 299, Defendants admit the Detention Report was signed under penalty of perjury by Foo and Gonzalez and that the Jurisdiction Report was signed under penalty of perjury by Apodaca and Butman; Defendants deny each remaining allegation.

## <u>THIRD CLAIM FOR RELIEF</u>
## MEDICAL EXAMS—FAILURE TO NOTIFY PARENT & ALLOW ATTEND (*sic*)

146. As to paragraph 307, Defendants incorporate by reference their responses to paragraphs 294 through 306.

## <u>FOURTH CLAIM FOR RELIEF</u>
## RETALIATION—1ST AMENDMENT

147. As to paragraph 312, Defendants incorporate by reference their responses to paragraphs 307 through 311.

**FIFTH CLAIM FOR RELIEF**
**4TH AMENDMENT VIOLATION BY JUDICIAL DECEPTION**

148. As to paragraph 316, Defendants incorporate by reference their responses to paragraphs 312 through 315.

**SIXTH CLAIM FOR RELIEF**
***MONELL* LIABILITY**

149. As to paragraph 320, Defendants incorporate by reference their responses to paragraphs 316 through 319.

150. As to paragraph 321, Defendants admit the County had a duty as to establish policies, procedures, customs, and practices to ensure they conformed with the Constitution but deny Plaintiffs' characterization of that duty.

151. As to paragraph 323, Defendants admit they had a duty as train its agents, officers, and employees to protect Constitutional rights but deny Plaintiffs' characterization of that duty.

152. As to paragraph 325, Defendants admit the County and its policymaking officials had certain knowledge regarding the need to protect certain Constitutional rights but deny Plaintiffs' characterization of that knowledge.

153. As to paragraph 326, Defendants admit the County and its policymaking officials had certain knowledge regarding the need to train its employees but deny Plaintiffs' characterization of that knowledge; Defendants deny each remaining allegation.

154. As to paragraph 329, Defendants admit Gonzalez and Butman reviewed and approved the documents filed in the underlying dependency cases; Defendants deny each remaining allegation.

155. As to paragraph 332, Defendants admit one named Defendant in the Third Amended Complaint was a defendant in one of the lawsuits Plaintiffs allege in paragraph 331; Defendants deny each remaining allegation.

156. As to paragraph 333, Defendants admit Gonzalez was sued one time for deception in the presentation of evidence; Defendants deny each remaining allegation.

157. As to paragraph 335, Defendants admit Gonzalez had access to police reports and school records; Defendants deny each remaining allegation.

158. As to paragraph 340, Defendants admit Gonzalez knew the court would rely on the Detention Report prepared by him and Defendant Foo to render a decision as to whether the court would remove the children from the family home; Defendants deny each remaining allegation.

## FIRST AFFIRMATIVE DEFENSE

Each claim for relief fails to state a claim on which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by absolute immunity

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by qualified immunity.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs were careless and negligent in connection with the matters Plaintiffs allege, and such carelessness and negligence proximately caused and contributed to the alleged loss and/or damage. Therefore, any damages awarded should be reduced in proportion to fault.

## FIFTH AFFIRMATIVE DEFENSE

The acts or omissions of others, negligent or otherwise, proximately caused or contributed to the loss or damage, if any, Plaintiffs sustained or may sustain. Therefore, any liability should be reduced in proportion to the fault of others, including without limitation any non-economic losses or injuries others caused.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because of a failure to mitigate alleged damages.

SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because they failed timely or properly to exhaust administrative remedies and/or failed to satisfy a condition precedent to a court action.

EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs assumed the risk of loss or damage of the nature Plaintiffs claim to have sustained.

NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, based on waiver.

TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, based on estoppel

ELEVENTH AFFIRMATIVE DEFENSE

Defendants' actions were based on a good faith exercise of responsibility conferred on them.

TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, based on managerial immunity.

THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, based on privilege.

FOURTEENTH AFFIRMATIVE DEFENSE

Defendants acted in good faith and with reasonable and probable good cause and with the honest and reasonable belief such actions were reasonable and necessary.

FIFTEENTH AFFIRMATIVE DEFENSE

Defendants acted with due care in the execution or enforcement of laws.

SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of consent.

SEVENTEENTH AFFIRMATIVE DEFENSE

Defendants acted in good faith with probable cause and with the honest and reasonable belief that their actions were reasonable and necessary and did not know

that any such actions would violate Plaintiffs' constitutional rights.

EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, based on unclean hands.

NINETEENTH AFFIRMATIVE DEFENSE

At all relevant times, Defendants acted reasonably.

TWENTIETH AFFIRMATIVE DEFENSE

Defendants neither knew nor had reason to know their alleged acts or omissions would violate any clearly established rights or laws.

TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because they had/have adequate state remedies.

TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs were given, or had available to them, proper due process for each of the alleged deprivations of their constitutional rights.

TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by qualified immunity based on the judicial or quasi-judicial functions of Defendants, including without limitation the fact that all relevant conduct was judicially directed, approved, and/or ratified.

TWENTY-FOURTH AFFIRMATIVE DEFENSE

Defendants allege and claim all rights, defenses, and immunities granted by virtue of California law to the extent they apply in this Court, including without limitation Government Code Sections 810 through 996.6, inclusive, and any other immunities, rights, and defenses provided by law, and the rights, defenses, and immunities granted by such Government Code sections shall not be limited or diminished by the other Government Code sections previously asserted as affirmative defenses.

TWENTY-FIFTH AFFIRMATIVE DEFENSE

Defendants' actions were authorized by multiple laws, including but not limited to Welfare and Institutions Code Sections 324.5(a) and 369(d) and Health and Safety Code Section 1530.6(a)(3), or the need to act because of exigency.

TWENTY-SIXTH AFFIRMATIVE DEFENSE

At the time of the alleged seizure, Defendants had reasonable cause to believe there was an imminent danger of serious injury or molestation and their actions were reasonably necessary to avert that injury or molestation.

TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent they seek to impose liability based on the doctrine of respondeat superior.

TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, based on the doctrines of collateral estoppel or issue preclusion, res judicata or claim preclusion, or *Rooker-Feldman*.

TWENTY-NINTH AFFIRMATIVE DEFENSE

As to each individual Defendant, Plaintiffs' claims are barred, in whole or in part, to the extent any such Defendant did not actively participate in the alleged conduct.

THIRTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Defendant's conduct was judicially directed, approved, and/or ratified.

Wherefore, Defendants pray for judgment as follows:

1. That Plaintiffs take nothing by their Third Amended Complaint and that their Third Amended Complaint be dismissed with prejudice;

2. For attorneys' fees incurred, as allowed by law;

3. For costs incurred; and

4. For such other and further relief as the Court deems proper.

Respectfully submitted,

Dated: April 24, 2026

HERUM CRABTREE SUNTAG, LLP

By: ______________________________

DANA A. SUNTAG
Attorneys for Defendants
COUNTY OF SAN JOAQUIN,
LAZARO GONZALEZ, CHARLIE
FOO, and RACHEL APODACA